Mr. Witterow? Yeah, Your Honor. Please do. Good afternoon, Your Honor. Afternoon. And with my 13 minutes, I will answer all of the other questions. You rest on your papers, right? Your Honor, I have to start with the fact that the judge did not abuse his discretion by admitting evidence of the murder of Rob Johnson as intrinsic to the charged conspiracy because, of course, it was intrinsic. It is hard to imagine evidence being anything but intrinsic in this conspiracy. Judge Friedman, you pointed this out. Dante Stewart testified that he is ordered to commit a murder by the leader of this conspiracy. He tells the jury that he has two roles in this drug trafficking organization. He has two roles in this conspiracy. He sells dope for Abdul West, and he's on call. And he's on call to commit active violence, including the death of Robert Johnson. Not only does the leader of the drug trafficking organization order a subordinate member to do it, that individual gets another individual from OVH to help with the murder. He is paid by other members of OVH, the drug conspiracy, in narcotics. The methamphetamine he takes from his murder victim is sold to a confidential source. It forms the basis for Count 8. It is charged as an overact in the conspiracy. It can't be anything but intrinsic. It directly proves the existence of the conspiracy. It shows the hierarchical structure of the conspiracy. It facilitates the fact that the expectation that low-ranking members have to commit acts of violence on behalf of them. You mentioned low-ranking members. Help me understand this. On page 111 of your brief, the government's brief, you state, quote, finally, the defendants would not be entitled to relief even if the evidence of the murder should have been excluded. Indeed, no evidence of the murder was admitted against Blanding. So any error necessarily was harmless to him. Similarly, no evidence of the murder was presented against Hickson. A couple of things flow from that. One was the limiting instruction. And two, if the murder is so intrinsic to the conspiracy, why wouldn't it also be evidence that would adhere against Blanding and against Hickson, those co-conspirators of the West? Oh, it's certainly intrinsic to the conspiracy. But there are certain things – many people during a conspiracy do certain things that other co-conspirators aren't aware of or do not know about. And they're not legally responsible for? Of course they would be held responsible for. Okay, but you're saying it wasn't admitted against Blanding and it was not presented against Hickson. That confused me. And again, was there a limiting instruction? A limiting instruction as to – Telling the jury not to take evidence of the murder against Blanding or against Hickson. No, one was not asked. It was not raised on – one was not asked by – to the court. It was not raised on this brief. Help me understand this because you have a conspiracy. And you're arguing, you know, with some justification that the order to kill Jackson given to Stewart, that was an act in presence of the conspiracy. Therefore, just basic conspiracy law, that action would be admissible against Blanding and against Hickson if it was something that was foreseeable as part of the conspiracy. Oh, no doubt, Your Honor, that it would be intrinsic and – Just forgetting whether it's intrinsic. Why wouldn't it be admissible – I don't get it right – against Blanding and against Hickson? It certainly is admissible against them. I think my – the portion you read, they're just not involved in the murder. The government never suggests – That's not what this says. It wasn't admitted against Blanding. And no evidence that the murder was presented against Hickson. But, again, there's no limiting instruction to the jury telling them, don't consider evidence of Stewart's – or, I'm sorry, Jackson's murder against Blanding or against Hickson. I believe the word admitted then would be the wrong term used. It just – there's no evidence that they were involved in it. And so there's no prejudice as to them, even if it was wrong, to admit it since it didn't involve them and the government didn't argue that they were involved in that homicide. I think what's important here, and I think what's telling, is counsel's concession that if Gibbs controls, this case is done. Gibbs is on point. It's exactly – it's less intrinsic than what occurs here. And for the first time, not raised in this brief, he states that Gibbs is modified by Green. And that is not true. A panel cannot modify a prior panel. It has to be done en banc. Green does not modify Gibbs. In fact, Green cites Gibbs as an example of intrinsic evidence. This Court's case in Williams, 2020, cites Gibbs as an example of intrinsic evidence. Gibbs is good law. Gibbs is controlling. Gibbs says that this is intrinsic evidence. And there's really no argument otherwise. Even if the court were to find that it wasn't intrinsic, it would be admitted under 404B. I understand the argument that limited instruction wasn't given. The judge did give robust instruction at the end of the jury that I believe would suffice. And as Judge Freeman said, even – Too far from that. In Gibbs, though, the indictment specifically stated that Gibbs used acts of violence to protect his position of leader of the conspiracy. This indictment, I don't know why, but the way I read it, it did not include actions of violence to perpetuate the activities of the conspiracy. It was basically drug dealing. It did not mention the murder of Jackson or anyone else. And Gibbs does not mention the attempted homicides. In a line in the indictment, it says uses violence. It does not mention the alleged acts of the two attempted murders and yet another third murder. In this, the indictment here does allege threats of violence. But that's not controlling either. The overt acts of – there are some overt acts in the indictment and there are some that are not. Williams discusses this in great detail when he talks about both RICO and drug trafficking conspiracies ultimately grounded in general principles of conspiracy law. And while admitting evidence of uncharged murders, states that the courts have afforded the prosecutions considerable leeway to present evidence, even of unalleged acts within the indictment period. So the mere fact that it wasn't stated that violence was done in the manner of mean section is not controlling. The question whether it's – does it – as Green states, does it prove the conspiracy or does it facilitate a portion of the conspiracy? And it clearly does. Turning it now to the district – in the letter sent by the court – just give me one moment. The letter sent by the court asks whether the district court committed error by failing to conduct an on-the-record balancing analysis under Rule 4 or 3 when admitting evidence of the Robert Johnson murder, the rap music lyrics, and the video. I just want to be very specific about this because I realize the court didn't cite any briefs. But that's because, as I think Mr. Goldberger conceded, there was no argument that no 4 or 3 analysis was done for the rap music lyrics and the video. I believe it's page 72 to 88 of the record. It's a very lengthy decision by Judge Bailson, citing chapter and verse of why those should be admitted. Yeah, but that doesn't negate – and I thought that portion – correct me if I'm wrong. Mr. Stengel was very good at correcting me, and I'm sure you'll be as artful at correcting me as Mr. Stengel was. But when I read that, I forgot where I was going with that now. But I thought the focus of that was very different. That was – he was explaining, Judge Bailson was explaining, that since it's coming in as intrinsic evidence, he wasn't going to go through the 4 or 4B analysis. But the fact it's intrinsic does not negate or abrogate the need to do a rule 4 with the balancing, though. It certainly does not, and nor did that happen in this particular case. I mentioned the October 22 decision. Mr. Stengel, before you go on, can you just show me where Judge Bailson did a rule 4 with the balancing with some of this evidence, the rap music? If I could just take you through that timeline, if I may, because I think that's important. On August 9th – I'm sorry, on September 9th of 2019, Donta Stewart files the motion to preclude evidence of the Robert Johnson murder. It's Donta Stewart who does it. Abdul West does not join in that motion. The government moves to admit the evidence. That's in the Supplemental Appendix 67 to 81. We then supplement our original motion when Donta Stewart pleads guilty. We have additional evidence to put forth. We supplement that on November 4th of 2019. And on November 6th, before Donta Stewart testifies, Judge Bailson says, I believe this is intrinsic. And the sole argument by Abdul West is it's not intrinsic. He doesn't ask about 4 or 3. His objection is it's not intrinsic. So then Judge Bailson, on the record of 538 to 539, goes through chapter and verse of why it's also admissible under 404B. Nobody asks about 403. Counsel does not object and say it shouldn't be admitted to 403 because the presidential value, the appropriate value is, the unfair prejudice outweighs the value of the evidence. The next day, Judge, the next day, it is the court that comes forth and says, I should mention 403. And that's what I did. He mentioned it. And he says why. By the way, I thought about my law court probably talking about Rule 403. Here's what Rule 403 says. He didn't do a balance and he just stated what the rule said. But it's the context of when it's done. First, when he says this is 403, I don't think that is unfair prejudice because it doesn't violate these parts of 403. Nothing is said by defense counsel. Nothing needed to be said because it was so obvious. Keep in mind, two weeks prior, he wrote a lengthy decision talking about very similar evidence. That evidence being the violence in the rap video, the only rap video of the three that were shown that dealt with violence, dealt with the murder of Robert Johnson and the assassination by Don Testu on behalf of OBH. That was the only video shown or asked by the government that dealt with any violence. He had cited chapter and verse on why that was admissible, why he didn't violate 403. And now there was additional evidence that he was discussing. No attorney said that his 403 analysis was lacking because it was so obvious how probative it was. It was intrinsic to the crime charge. And any unfair prejudice had to do with the nature of the alleged act that the defendants committed. And I think I'm citing from cross from this court that said that the government doesn't have to only present the full story of Casper Milk Toast. We're allowed to show the full extent of the defendant's criminal conduct, provided that it falls within the rules of evidence. And this certainly did. His 403 analysis was not lacking. Everyone knew that it was probative. Everyone knew that there was no unfair prejudice. And if it was not, if it was lacking, this court can submit its own 403 analysis. And, of course, the probative value of that evidence far outweighs any unfair prejudice. It shows that the conspiracy happened. It provides direct evidence of what is charged in count one. And the only unfair prejudice is the nature of the alleged act, the murder. But if that was enough to tip the scales in any 403 analysis, then you wouldn't have cases like Gibbs. Then you wouldn't have cases like Williams. And Williams cites a litany of cases from other districts of violence used in narcotics trafficking cases. If the fact that it was just a murder would tip the scales in that direction. So Gibbs is about conversations between co-conspirators about acts in furtherance of the conspiracy. And so I can see how the Duntas Stewart testimony seems like the situation in Gibbs. But the rap lyrics seem different. That's not a conversation between co-conspirators. It's just it's performing some statements. So why should that fall under the Gibbs umbrella also? I don't think it needs to, Judge. Under the rap lyrics, counsel doesn't argue they're not intrinsic. He conceives they're intrinsic in his brief. There is no argument in the rap music video that those weren't intrinsic, just that they violated 403. I don't know how I understood it. OK. So you think they concede the rap lyrics are intrinsic, but not the conversation with Stewart. Directly in their brief. And we mentioned in ours that that's what they do. But more importantly, Judge, this is the portion of the rap video that was not in your letter to all parties, but I'd be happy to discuss it. The idea that based upon Dr. Cooper's testimony, that the jury is incapable of deciding what is true or what is not, it's just beyond the pale in this particular case. The government sought to use very distinct portions of three videos, totaling a total of approximately three minutes. It actually turns into six minutes because the other defense attorneys want to play more videos to show the production value. But we point to specific aspects in real life that we can prove definitively happened. The fact that Hickson provided narcotics to Abdul West. The fact that one Water Street was hit and 10 kilograms of cocaine were taken. The fact that Dontez Stewart was sent by Abdul West to murder Robert Johnson on behalf of OVH. We took those confessions that were put to music and showed other evidence that supported that these actually happened. The idea that the jury was incapable of deciding what was true and what was not just can't be. So as to that, the judge doesn't rule 403. I believe that he's correct when he decides that the probative value of those videos far away any prejudiced effect they were given. Again, if you read both the briefs by my colleagues on the other side, as well as some of the argument here, you would think that the government did nothing for two weeks but play rap video after rap video after rap video. Rap video number one in the August 22nd decision by Judge Bailenson was 15 seconds long. The third rap video, identified as number three, is the only one that talks about violence. It's a minute and 46 seconds, I believe. And the last one that discusses the video taken, the last one talking about the One Water Street apartment, it's a minute and nine seconds the government wanted to play. Again, no violence associated with those other two rap videos. Turning out to some other points raised by defense attorneys, I have to briefly talk about Mr. Goldman and the Williams issue, the issue about whether or not how the judge incorrectly charged the conspiracy. And I have to say that that's not what was briefed in this particular case. No one made it. That was not what was briefed in this particular case. No one states that Judge Bailenson charged the conspiracy charge wrong. What everyone agrees is that he should have had an individual finding as to the defendants as to the conspiracy charge. And that's in hindsight because Williams has decided, I think, a year after the verdict in this particular case. And the only thing that needs to happen is what the district court did, not sentence him in accordance with a mandatory minimum. In Williams itself, which none of my colleagues on the other side acknowledge, found that there was no violation of substantial right because those defendants were sentenced above the mandatory minimum. There's simply nothing else that has to occur in that event. And now turning finally to the severance issue, I have to say that listening to Mr. Archie, I thought you were arguing a sufficiency of the evidence claim, which is not in this appeal. I understand he has issues with how the jury took the evidence in this particular case. But those issues are facts for the jury to find. There is no sufficiency claim before this court. The question is whether or not there should have been severance. He cites the music videos. One of those specifically references Mr. Hickson. And so, of course, would be admitted in a conspiracy case against him whether or not he was severed. Same with the murder. If it was intrinsic to the conspiracy, it would have been admitted to Mr. Hickson. Without it, the case law in this particular realm is clear. It's a Herculean task for him to win on appeal for severance. The greatest evidence about this is that he's not convicted of count six, that the jury was able to compartmentalize all the evidence it heard, found Hickson not guilty of count six, but found him guilty of the conspiracy in count 12, where the evidence was overwhelming. And I know my time is red, but I would be remiss to say that the evidence in this case is overwhelming in all aspects. Whether or not you find that the murder was intrinsic or not, there was evidence of all defendants at various stash houses, physical and electronic surveillance, countless text messages and Instagram accounts showing all the defendants at various locations, in stash houses where narcotics were found. Hickson didn't have an Instagram account, did he? Yes, that followed up in his appeal, he doesn't have an Instagram account, but he's in many of the other individuals' Facebook accounts or Instagram accounts. He's shown in L.A. while they're surveilling them, making it snow in L.A. He has Instagram accounts with- Who said making it snow in L.A.? It is on the Instagram accounts. I think it's Jameel Blanding who has it. But again, these are cases involving co-conspirators and statements in furtherance of the conspiracy. So they would be admissible against Mr. Hickson. It wasn't admissible, I'm just trying to get to the quantum of evidence against Hickson. But even if you take away all of the Instagram accounts, there's the text messages from Hickson's phone to other members of the conspiracy. He's the one who helps get the apartment at 1 Water Street. When it is hit by members of the Federal Bureau of Investigation, he's the first person to contact Abdul-Wesson, sorry we took a hit. It is clear that he was involved in the conspiracy, and the evidence against him for the conspiracy as well as Count 12 is just overwhelming, as is all defendants in this particular case. Well, the acquittal certainly does help your argument there too. I apologize, Judge. The acquittal there certainly does strengthen your argument. Thank you. Thank you. Welcome back. Courts indulgence, I can't promise I'll stick to three minutes, but I'm going to do my absolute best. I'll start with evidence is overwhelming because Mr. Witherell just ended there, and this goes back to the very beginning of Mr. Goldberger's argument and your Honor, Judge Freeman's question to him about what a hypothetical jury would do in a case where the lyrics and murder evidence was excised. And I have citations for the point Mr. Goldberger made that, in fact, the harmless error standard, even on an evidentiary ruling, is whether the government can show that the improperly admitted evidence did not contribute to the verdict actually rendered. So just as in constitutional harmless error where the court doesn't ask what a hypothetical jury might have done, evidence is overwhelming, does not cure, does not establish harmlessness unless there is no possibility that, in fact, the improperly admitted evidence contributed to the verdict. Citations include Smith, 725F330, which is citing a case called Helbling, H-E-L-B-L-I-N-G. Can you spell it again, please? Sorry. H-E-L-B-L-I-N-G, which is 209F3226. And Justice Alito, in the Murray opinion as well, talks about this standard as well. So this is just because, you know, this is a framing for all of these evidentiary issues, and it responds as well to the point that Mr. Witherell was just making. Evidence is overwhelming actually doesn't answer any of these questions. Your Honors, in terms of the 403, I commend to the Court's attention for Appendix 1524 and then for Appendix 2002. That's the full extent, actually the first of those, of the so-called 403 balancing. And Your Honors will see that Judge Bailissette essentially comes back in, kind of adds in this conclusory comment about the 403, and then ultimately, days later, declines to instruct on 404B, having ruled that the evidence was intrinsic. That's the sum total, Your Honors. So let's – oh, and then one last point on this intrinsic evidence issue. Mr. Witherell said that a panel cannot modify an earlier panel ruling that Green cannot have modified Gibbs. That's just incorrect. It can certainly refine. It can certainly modify. It can't overrule. And we're not contending that it overruled, but certainly Green was a landmark in Third Circuit jurisprudence. Everybody recognizes it as such, and to the extent that it has refined the Gibbs analysis, it was very clear on its face, the Green opinion, about the fact that earlier decisions might have been imprecise. Speaking of, you know, maybe you wish you'd said things differently, I think we heard that from both Mr. Stengel and Mr. Witherell, that maybe the way that they had put things in their brief or the way that they had put things below was not exactly how they wished they would have said them now, and yet they're asking this Court to trust their representations of the facts and the record. So Mr. Stengel said, for example, that Mr. Blanding's trial counsel conceded that an inventory search would have turned up these – I'm sorry, conceded that the PPD held onto the phones for three months. If Your Honors look at Appendix Page 336, in fact, the government says, we just gave Mr. Hughes material that answers all these questions, and Mr. Blanding's trial counsel says, I don't think this actually answers the questions. So that's where we are, Your Honors. And then we have Officer Vargas testifying about the property receipts, including things that would get returned immediately to the defendant. The government's saying, trust us, as to the phone seized in the so-called protective suite. But the phones themselves, I've now verified, were in evidence at 7-Eleven. You hear them saying protective suite, so much as it qualified under Prong to buoy. I think they were arguing both for no reasonable suspicion standard and saying that there was reasonable suspicion. But I think Mr. Stengel's point ultimately on whether the court has to remand for fact-finding was, don't worry about those phones because really there's nothing in the record. Again, the phones themselves were in the record. At least one extraction was in the record that Mr. Stengel referenced. And again, we have this question of what their impact was downstream from that. The other sort of trust us point we're hearing from the government is trust Vargas. Vargas wasn't trying to break the law. The court knows that's not the standard. Suppression is not punishment. Suppression is what flows from a Fourth Amendment violation. And the subjectivity of whether Vargas thought he was or wasn't breaking the law has absolutely nothing to do with the inquiry. I agree with Mr. Stengel. I urge the court to closely read the Herring opinion. Herring refers to isolated negligence that is attenuated from the Fourth Amendment violation. It's really almost, as I remember Herring, it's the kind of thing that was really excusable, inadvertent. Herring is a great case for us, Your Honors. It was somebody neglected to update the computer to show that a warrant had been withdrawn. The police arrested Mr. Herring, found contraband on him. Ten minutes later, somebody from the office said, oh no, the computer wasn't updated. And they kind of tried to un-arrest him, but it was too late because they'd found contraband. So that's what we're talking about, isolated negligence that is separated from the violation. Here, what they're saying was just isolated negligence is the violation. Maybe this police officer misunderstood the Fourth Amendment. Well, we can't start treating that as something that is an exception to the exclusionary rule. Because the whole point is, police officers may be imperfect in their application of the Fourth Amendment, whether it's deliberate, whether it's inadvertent, has no bearing whatsoever. Suppression is still required. Briefly on inevitable discovery and independent source, because I mixed them up early in my argument as well. Independent source is a but-for analysis that focuses on what actually happened. It's not a hypothetical. Independent source is, yes, the police entered that home without a warrant, but then they went back to the magistrate, got a warrant based on completely legitimately obtained information, and they went back to the house with a warrant. That's an independent source. Now, that house didn't go anywhere. So part of the point to the language that Your Honor Judge McKee had focused on from Murray, that it's going to be pretty darn hard for the government to show independent source if what it's been doing is holding on to that evidence until it can actually establish probable cause. That's why we have, it is frankly a deterrence issue, but it's also a doctrinal issue here. That is, it cannot be, independent source cannot be used to countenance seizure of material for which one lacks probable cause so that you can hold on to it until you've actually developed it. Inevitable discovery, the government waived this. Your Honors know that the court doctrine on this requires a near certainty of what would have unfolded. They didn't argue it below. They're not arguing it, except for that one reference to inventory, they're not arguing it here. But when Your Honors look at the record as well, Your Honors will see, and here's just another point to look at from the suppression hearing, Vargas' testimony at Volume 2 of the Appendix 269, things that are on property receipts are there so the defendant can go back and get them after he's released. That does not mean that anything that gets inventoried or listed on a property receipt is going to be held in evidence. And unless the government had shown below that it would be essentially inevitable that on an arrest for simple possession that somebody's phone would be taken, or even on an arrest for trafficking not supported by probable cause, that the phone would necessarily be held, the whole inevitable discovery analysis is simply unavailable to them. And again, they did not develop the record on it. They certainly can't use it now, and they simply cannot meet the standard. Getting very close to the end, Your Honor, but one of the things that the court has focused on understandably is, did Vargas have probable cause of trafficking? And one of the court's questions was, what did he learn from the FBI agent, from Stevens, when Stevens called him and said, go find a reason to stop this guy? Mr. Stengel said that Stevens told him that he was investigating drug trafficking. The testimony was actually, it's a drug investigation. I don't know what that means, but there was so much emphasis repeatedly on the fact that, in fact, Officer Vargas knew nothing about Blanding, knew nothing about his role. And the government was trying to use that in this sort of framing of, no, no, no, this wasn't some sort of a nefarious attempt to do the Fed's work for them. They were kind of backing away from that. But in fact, what Vargas testified was, he really didn't know much about Blanding. He knew the general nature of the task force's work. But here's what's more important. Mr. Stengel below says repeatedly, when Judge Baleson asked him, no, the government is not relying on what the FBI knew. No, the government is not relying on what the FBI told Vargas. He says it, has an extended colloquy with Judge Baleson from 632 to 34, again, volume two of the appendix, again on 639. And he explains the government's rationale for that. This isn't a case, Your Honor, where the FBI might have said, there's a gun in the car or we think he has drugs or anything else. Stevens just said to Vargas, find a reason to stop this guy. The government over and over below assured the trial judge that they were not relying on the very thing that they're now telling this court they're relying on. And as Your Honors pointed out, either Vargas seized telephones and held them on simple possession, which is a problem. Or Vargas decided that things like being nervous and having more than one phone was enough to establish probable cause of trafficking. What about the 7,000 in cash? Your Honor, huge swaths of the population are unbanked or underbanked, in Philadelphia in particular. I know a lot of those folks, but I'm not sure a lot of them walk around with seven large in their pocket. May or may not be, Your Honor. But the test is, if we're talking about probable cause, this isn't a reasonable suspicion standard. Could be that he's up to something illegal. That's reasonable suspicion. Probable cause, this is some probable articulable objective information that makes me think this cash in this man's pockets is proceeds of... What about the unidentified liquid at that point in the baby container? I'm sorry? What about the liquid? The liquid, the blue liquid, which the lab never tested. I mean... I get that, but the police officer does see the liquid, right? He sees the liquid. It's personal use quantity, Your Honor. So they've got a drug dog. I'm sorry? It's a baby bottle. It's a baby bottle, and he says... A baby bottle and seven large in their pocket. And actually Vargas testifies. It's got gradations on it so that the user can figure out how much they want to take at once. And that's even assuming that it was in fact what the officer speculated it was. And, you know, why the lab never ran the test, I don't know. I'm not going to speculate either. But regardless, none of that's trafficking. He's not selling that stuff. And, again, the mere possession of cash may or may not be reasonable suspicion to distinguish between illegal and legal. And it may or may not be reasonable suspicion to distinguish between possession and trafficking. But it is certainly not probable cause given the reality that a very large percentage of the population is still living in a cash economy. And at the end of the day, Mr. Singel admitted to the court, when I believe Judge Freeman said, wait a second, are you telling me it's possession or are you telling me it's trafficking? And I think, Judge McKee, you said, hold on a second, how does it help you? What he admitted is that the government is trying to have its cake and eat it, too. He didn't admit it. He said he'd like the cake any way or more. You know, I get why they're doing it, but the Constitution does not tolerate it. Thank you. Thank you. Well, thank all counsel for the briefs and their arguments today. We're also going to ask that a transcript of this argument be prepared and let the government pay for it. And just for the record, I would like to submit a supplemental one page. Because there's an issue with the phones. If those phones are suppressed from landing, there's the text, this miserable text that they said was Jamil Hickson. Do it 28-11. Send a letter to us. Thank you. Have a good day, folks.